IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**CHERYL ANN OFFUTT**                                                                    **PLAINTIFF**

**V.**                                         **CASE NO. 4:14CV258-BD**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                              **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff Cheryl Ann Offutt has appealed the final decision of the Commissioner of

the Social Security Administration to deny her claim for supplemental security income.

Both parties have submitted appeal briefs and the case is ready for decision.[1]

The Court's function on review is to determine whether the Commissioner's

decision is supported by substantial evidence on the record as a whole and free of legal

error. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Long v. Chater*, 108 F.3d 185,

187 (8th Cir. 1997); see also 42 U.S.C. §§ 405(g).  Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257

(8th Cir. 1996).  In assessing the substantiality of the evidence, the Court has considered

evidence that detracts from the Commissioner's decision as well as evidence that supports

it.

---

[1]The parties have consented to the jurisdiction of the Magistrate Judge.  (Docket
#4)

Ms. Offutt alleged she became limited in her ability to work by arthritis, heart problems, and breathing problems. (SSA record at p. 75) After conducting an administrative hearing, the Administrative Law Judge[2] (ALJ) concluded that Ms. Offutt had not been under a disability within the meaning of the Social Security Act at any time through April 19, 2013, the date of his decision. (*Id*. at 31) On March 28, 2014, the Appeals Council denied the request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (*Id*. at 1-3) Ms. Offutt then filed her complaint initiating this appeal. (Docket #2)

Ms. Offutt was 55 years old at the time of the hearing. (SSA record at 41) She attended school through the tenth grade. (*Id*.) At the time of the hearing she lived with a friend. (*Id*.) She had past relevant work as a clothing presser and a housekeeper. (*Id*. at 30, 63)

The ALJ found that Ms. Offutt had not engaged in substantial gainful activity since August 29, 2011, the application date. (*Id*. at 13) He found that Ms. Offutt had "severe" impairments: hypertension; a history of supraventricular tachycardia; mild degenerative change in the right knee and very mild degenerative change in the left knee; costochondritis; generalized anxiety disorder; mood disorder NOS; cognitive disorder NOS; and borderline intellectual functioning. (*Id*. at 14) He found she did not have an impairment or combination of impairments that met or equaled a Listing. (*Id*. at 14-16)

---

[2]The Honorable Mark Schafer.

He judged that Ms. Offutt's allegations regarding the intensity, persistence, and limiting

effects of her symptoms were not totally credible. (*Id*. at 17-29)

Based on these findings, the ALJ concluded that Ms. Offutt retained the residual

functional capacity for medium work, but could only occasionally stoop, crouch, kneel,

crawl, and balance. He also found her to be unable to climb ladders, scaffolds or ropes,

and unable to work from unprotected heights. In addition, she would have to avoid

excessive exposure to dust, smoke, fumes and other pulmonary irritants, and could

perform only simple, routine, repetitive tasks where the supervision required is simple,

direct and concrete. (*Id*. at 16)

Based on testimony from a vocational expert (VE), the ALJ concluded that Ms.

Offutt could perform her past relevant work as a clothing presser and housekeeper but

could also perform other jobs that existed in significant numbers in the national

economy.[3] (*Id*. at 30-31) Thus, the ALJ concluded that Ms. Offutt was not disabled. (*Id*.

at 31)

**Credibility**

Ms. Offutt complains that the ALJ's credibility determination is not supported by

substantial evidence. Specifically, she argues that the ALJ based his credibility

determination solely on her history of substance abuse. (Docket entry #11 at p. 9)

---

[3]The VE identified two jobs that a person with Ms. Offutt's limitations could
perform – parts assembler and cafeteria attendant. (*Id*. at 27)

To evaluate Ms. Offutt's credibility, the ALJ followed the required two-step

process and considered the required factors.[4]  (SSA record at pp. 17-29)  See *Policy*

*Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims:*

*Assessing the Credibility of an Individual's Statements*, SSR 96-7p (July 2, 1996).  Thus,

the question before the court is whether substantial evidence supports the ALJ's

evaluation of Ms. Offutt's credibility.

The ALJ may discount a claimant's complaints of pain if they are inconsistent with

the evidence as a whole.  *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001);

*Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).  Here, the ALJ acknowledged Ms.

Offutt's admitted history of substance abuse and her testimony that she had used drugs to

treat her pain.  *Id*. at 17.  He did not base his credibility determination, however, solely on

her history of substance abuse.

The ALJ found that the medical evidence as a whole did not support the degree of

limitation alleged by Ms. Offutt.  He noted Ms. Offutt's complaints of heart problems,

anxiety attacks, mood swings, hypertension, respiratory or breathing problems, and

arthritis.  (*Id*. at 18-19)  The ALJ reviewed Ms. Offutt's medical records in detail and

---

[4]In considering the credibility of a claimant's subjective complaints, an ALJ must
consider: (1) the claimant's prior work record; (2) observations by third parties and
treating and examining physicians relating to such matters as: (a) the claimant's daily
activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and
aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e)
functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

determined that the medical findings were inconsistent with disabling pain.  SSA record

at 21-29.  Substantial evidence supports his determination.

Dr. Randolph performed a consulting examination of Ms. Offutt in November,

2011, and found that she had normal range of motion in all joints, full limb function but

with pain in the toes with heel-toe walk, and knee/back pain when squatting.  (*Id*. at 258-

60)  He diagnosed chest pain with a questionable history of irregular heart rhythm,

arthritis, and hypertension.  (*Id*. at 260)  He concluded Ms. Offutt had mild limitation in

pushing, pulling, heavy lifting, climbing, and squatting.  (*Id*.)

The ALJ also considered the records of Ms. Offutt's treatment for chest pain and

breathing difficulties.  X-rays of her chest did not reveal evidence of acute disease, and a

spirometry test was normal.  (*Id*. at 291, 298)

The ALJ considered Ms. Offutt's complaints of knee pain, but noted that an x-ray

of Ms. Offutt's knees showed "very minimal changes of osteoarthritis."  (*Id*. at 324)

On December 17, 2011, Steven Strode, M.D., a state agency physician, found that

Ms. Offutt had the ability to perform medium work with limitations on climbing ladders,

crouching, and concentrated exposure to fumes.  (*Id*. at 310)  On February 21, 2012,

Sharon Keith, M.D., reviewed the medical evidence and affirmed Dr. Strode's

assessment.  (*Id*. at 328)

On February, 2012, Ms. Offutt was taken to the hospital after experiencing several

falls.  Her son reported she had taken a Valium and consumed alcohol.  A CT scan of Ms.

Offutt's brain was normal.  (*Id*. at 357)  A CT of her spine showed degenerative changes

most pronounced at C5-C6, a combination of posterior bony osteophyte formation and

bilateral Luschka joint disease.  (*Id*. at 358)  Chest x-rays revealed no pleural effusions

with heart size within normal limits, but showed some evidence of bilateral prominence

of the hilar region.  The interpreting physician recommended a comparison with prior

chest x-rays.  (*Id*. at 359)

During a visit to Baptist Health Medical Center (Baptist) in June 2012, Ms. Offutt

complained of chest pain, and was diagnosed with supraventricular tachycardia (SVT).

(*Id*. at 489)  She underwent a successful radiofrequency ablation.  (*Id*. at 490)  At a

follow-up visit on June 26, 2012, Jeffrey Neuhauser, D.O., noted that Ms. Offutt's SVT

was causing no symptoms, and she had no evidence of recurrent SVT.  (*Id*. at 716)

Ms. Offutt complained of left leg pain following the procedure, but the ALJ noted

a venous Doppler study of her left, lower leg was normal, and there was no deep vein

thrombosis.  (*Id*. 26, 758)  An ECG of Ms. Offutt performed on June 26, 2012, was

normal and her SVT was "asymptomatic."  (*Id*. at 732)

During a visit to Baptist August 2, 2012, she complained of chest pain.  (*Id*. at

751).  On examination, her breathing was normal; she had tenderness in her left chest; she

had normal range of motion; no edema; no tenderness; no clubbing or cyanosis; no

swelling erythema warmth or mass in the left groin area; and her distal motor and sensory

function was intact.  (*Id*. at 749) Lori Bacon, M.D., diagnosed chest wall pain and lower

limb pain and prescribed Naproxen/Vicodin.  (*Id*. at 751)  A chest x-ray was normal.  (*Id*. at 757)  A CT showed no evidence of pulmonary embolus or other acute pulmonary finding.  The main, left, and right pulmonary arteries were enlarged, but it was noted that a "[h]istorical correlation as to the presence of primary pulmonary arterial hypertension should be made."  (*Id*. at 757)  A venous Doppler of the left lower extremity was normal with "[n]o deep vein thrombosis."  (*Id*. at 758)

On January 10, 2013, a week before her administrative hearing, Ms. Offutt returned to Baptist complaining of chest pain, pain in her groin, difficulty sleeping, and dizziness.  (*Id*. at 799)  There was no evidence of recurrence of her SVT since her ablation; a nuclear scan and ECG were normal.  (*Id*. at 799-800)  Dr. Neuhauser diagnosed unspecified chest pain.  (*Id*. at 800)

The ALJ considered multiple instances in the record when Ms. Offutt denied substance abuse.  She denied abusing drugs during a June, 2012 visit to Baptist, but a drug screen performed during the visit indicated that Ms. Offutt was positive for cocaine, methamphetamine, and Benzodiazepine.  (*Id*. at 490, 497).  She was given a list of rehabilitation programs that required self submission.  (*Id.*)

James R. Moneypenny, Ph.D., performed a mental evaluation of Ms. Offutt.  At the examination, Ms. Offutt told Dr. Moneypenny that she had no history of substance abuse, but then later, at the administrative hearing, admitted she had not been truthful.

(*Id*. at 22, 67, 265)  At the administrative hearing, Ms. Offutt testified that her daily use of

methamphetamine did not affect her ability to work.  (*Id*. at 54)

Further, in assessing credibility, the ALJ considered not only the medical record

but also Ms. Offutt's activities of daily living, including her reports that she worked for

thirty years as a bartender and reports to treating and consulting sources that she had

provided in-home care for the person she lived with.  (*Id*. at 67-68, 264, 497)  Ms. Offutt

claimed depression and anxiety, but failed to seek treatment for her allegedly disabling

mental impairments.  (*Id*. 26-27)  These are all factors that an ALJ may properly consider

when making a credibility determination, and there is substantial evidence in the record to

support the ALJ's credibility determination.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th

Cir. 1984).

**Opinion Evidence**

Ms. Offutt complains that the ALJ did not account for her "extremely low

intellectual level" and low Global Assessment of Functioning (GAF) score.  (Docket

entry #11 at p. 9-11)   As support for her contention, Ms. Offutt points to the consulting

report of James R. Moneypenny, M.D., who found that Ms. Offutt had borderline

intellectual functioning and a GAF score of 50.  (SSA record at 263-69)

The ALJ considered Ms. Offutt's mental functioning in activities of daily living;

social functioning; concentration persistence, and pace; and episodes of decompensation.

(*Id.* at 14-16)  Additionally, he discussed in detail the consultative examination performed by Dr. Moneypenny.

Dr. Moneypenny noted that Ms. Offutt described symptoms of anxiety and depression.  (*Id.* at 267)  He diagnosed generalized anxiety disorder; mood disorder, NOS; cognitive disorder, NOS; and borderline intellectual functioning.  He found that she was "unable to tolerate the presence of people and adapts by isolating herself," but otherwise that she was independent and self-sufficient.  (*Id.*)

Dr. Moneypenny noted that, during the examination, Ms. Offutt was able to express herself clearly and communicate in an intelligible and effective manner.  (*Id.* at 268)  He found that she had a fair to poor ability to handle stress and poor adaptive resources, ability to concentrate on basic tasks, and capacity to complete school or work-like tasks within an acceptable time-frame.  (*Id.*)

Ms. Offutt complains that the ALJ did not properly consider Dr. Moneypenny's diagnosis of borderline intellectual functioning.  The ALJ acknowledged Dr. Moneypenny's finding of borderline intellectual functioning, but also noted Dr. Moneypenny's statement that Ms. Offutt's educational and developmental history and her adaptive functioning were not consistent with mental retardation.  (*Id.* at 22, 266)  The ALJ pointed that out Ms. Offutt had not repeated any grades in school, had attended regular classes, had taught herself to be a bartender and had worked as one for thirty years.  (*Id.* at 22-23, 264-65)  Further, Ms. Offutt was able to care for her own personal

needs, communicate adequately, drive, and perform household chores such as laundry and preparing meals. (*Id*. at 19-21, 264-66)

The ALJ also noted that Ms. Offutt reported to Dr. Moneypenny she was not taking any medication and had never received mental health treatment.  She also reported that she was living with a person who had hired her as a care giver and that she had last worked at a nursing home, but had "gotten tired of that work setting." (*Id*. at 264)  This evidence supports the ALJ's conclusion that Ms. Offutt was capable of performing unskilled work.

The ALJ also discussed the reports of the State agency consultants who found that Ms. Offutt's mental impairments did not preclude her from performing a limited range of medium work.  State agency consultant Cheryl Woodson-Johnson, Psy.D., reviewed Ms. Offutt's records and concluded she did not have marked limitation in any area; had a cognitive disorder, NOS; mood disorder, NOS; and an anxiety related disorder. (273-285)  Dr. Woodson-Johnson concluded that Ms. Offutt had the ability to engage in work-related activities that are simple to complex; that she could adhere to a schedule and complete workweek requirements, but that she might be more comfortable in an environment where her contact with others is minimized. (*Id*. at 274)  Abesie Kelly, Ph.D., reviewed Ms. Offutt's records on January 25, 2012, and affirmed Dr. Woodson-Johnson's opinion. (*Id*. at 318-21)

Ms. Offutt also complains that the ALJ did not properly consider the GAF score

of 50 assigned by Dr. Moneypenny. *The Diagnostic and Statistical Manual of Mental*

*Disorders* (4th ed.) ("DSM–IV"), published by the American Psychiatric Association,

states that a GAF score of 41 to 50 generally indicates serious impairment in social,

occupational, or school functioning. (DSM–IV 32) The DSM–IV, however, is a

classification of mental disorders that was developed for use in clinical, educational, and

research settings. Specific diagnostic criteria included in the DSM–IV are meant to serve

as guidelines to augment clinical judgment and are not meant to be used in a cookbook

fashion. A GAF score does not have a direct correlation to the severity requirements in

mental disorders listings. 65 Fed.Reg. 50746, 50764–65 (2000).

Here, the ALJ acknowledged Ms. Offutt's GAF score but adequately explained

why it was not controlling. (*Id*. 22-23) He considered the score along with other

evidence in the record. He did not err by declining to give the score greater weight than

he did. See *Jones v. Astrue*, 619 F.3d 963, 972-74 (8th Cir. 2010) (ALJ may afford

greater weight to medical evidence and testimony than to GAF scores when the evidence

requires it). There is ample support for the ALJ's conclusion that Dr. Moneypenny's

opinion was entitled to limited weight.

**Hypothetical**

Finally, Ms. Offutt complains that the ALJ did not pose a hypothetical to the

vocational expert that encompassed all of her "relevant impairments." "The hypothetical

question must capture the concrete consequences of the claimant's deficiencies. However, the ALJ may exclude any alleged impairments . . . properly rejected as untrue or unsubstantiated." *Perkins v. Astrue*, 648 F.3d 892, 901–02 (8th Cir. 2011); see also *Lacroix v. Barnhart*, 465 F.3d 881, 889–90 (8th Cir. 2006) ("[T]he hypothetical question need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the 'concrete consequences' of those impairments.").

Here, the ALJ questioned a vocational expert about the availability of work for a person who could perform medium work requiring only occasional stooping, crouching, kneeling, crawling, and balancing; excluding work on ladders, scaffolding, ropes, and unprotected heights; and limited to simple routine, repetitive tasks with supervision which is simple, direct and concrete. (SSA record at 64) Because these limitations captured the concrete consequences of Ms. Offutt's impairments, the ALJ's question was proper. The vocational expert found that Ms. Offutt could perform her past relevant work as a clothing presser and housekeeper and identified two other unskilled jobs as representative work. (*Id*. at 63-65) The vocational expert's testimony shows that work existed that Ms. Offutt could perform. Because such work existed, Ms. Offutt was not disabled under social security disability law.

**Conclusion**

It is not the task of this Court to review the evidence and make an independent

decision.  Neither is it to reverse the decision of the ALJ because there is evidence in the

record which would support a different outcome.  The test is whether there is substantial

evidence, on the record as a whole, to support the ALJ's decision.  *Van Vickle v. Astrue,*

539 F.3d 825, 828 (8th Cir. 2008).

The Court has reviewed the entire record, including the briefs, the ALJ's decision,

the transcript of the hearing, and the medical and other evidence.  There is ample

evidence on the record as a whole that "a reasonable mind might accept as adequate to

support [the] conclusion" of the ALJ in this case.  *Richardson v. Perales*, 402 U.S. at 401.

The Commissioner's decision is not based on legal error.

The final determination of the Commissioner is AFFIRMED.  The oral argument

hearing scheduled for February 19, 2015, at 10:00 a.m. is canceled.  Ms. Offutt's

complaint is hereby dismissed with prejudice, this 27th day of January, 2015.

_____
UNITED STATES MAGISTRATE JUDGE